**In Re MODIFICATION OF CANON 3A(7) OF THE MINNESOTA CODE OF JUDICIAL CONDUCT.**

**Petition of MINNESOTA JOINT MEDIA COMMITTEE.**

**No. C7-81-300.**

Supreme Court of Minnesota.

May 22, 1989.

## ORDER

WHEREAS, on October 3, 1988, the Minnesota Joint Media Committee filed a petition to modify Canon 3 A(7) of the Minnesota Code of Judicial Conduct to per-

mit audio and video coverage of trial court proceedings on an experimental basis for no more than one year; and

WHEREAS, on April 13, 1989, a public hearing was held before this Court to determine whether the petition should or should not be granted:

Based upon the files, records, and proceedings herein,

IT IS HEREBY ORDERED that the petition be, and the same is, denied upon the basis that the petitioner has failed to sustain the burden of showing that it is entitled to the relief requested.

IT IS FURTHER ORDERED that the experimental program originally authorized by this Court by order of April 18, 1983, be, and the same is, reinstated to continue in effect until January 1, 1994 or until further order of this Court.

POPOVICH, C.J., took no part in the consideration or decision of this matter.

## MEMORANDUM

The Minnesota Code of Judicial Conduct, adopted in 1974, is based on a model drafted by the American Bar Association and, in its original form, Canon 3 A(7) prohibited audio and video recording of proceedings in all courts. The canon was amended on January 27, 1978, to permit electronic recording of proceedings only in the Supreme Court on an experimental basis for an indefinite period.

In March 1981, representatives of the media petitioned the court for an expansion of that authorization—a permanent amendment to the canon or a 2–year experimental period—either of which would allow coverage of trial court proceedings. After a public hearing in August 1981, the court appointed the Minnesota Advisory Commission on Cameras in the Courtroom to consider the implications of such a procedural change. The commission filed its report in January 1982 and, thereafter, this court held a public hearing in June 1982 to determine whether the recommendations of the commission should be adopted.

By order of April 18, 1983, the court adopted the commission's conclusion that the petitioners had failed to demonstrate that they were entitled to the relief requested; however, believing that further study was necessary, we adopted the recommendation of a majority of the commission to permit audio and video coverage of trial court proceedings on a restricted experimental basis for 2 years. The order approved appropriate technological standards and defined the restrictions imposed to protect certain aspects of the trial court proceedings and participants. In August 1985, the experimental period was extended until April 17, 1987. This extended period expired without immediate efforts by media representatives either to extend further the time or propose alternative action.

The Minnesota Joint Media Committee filed the present petition on October 3, 1988 which, in essence, sought an additional experimental period for 12 months and a deletion of the threshold requirement that the court and all parties consent to expanded coverage. A hearing was conducted on April 13, 1989, at which a number of representatives of the media, the trial courts and the practicing bar presented their statements.

In our supervisory capacity over the administration of justice throughout all courts in the State of Minnesota, we define the issue presented in a much broader sense than would any of the petitioners or respondents, namely, whether the petitioners have sustained their burden of establishing that the expansion of audio-video coverage of trial court proceedings would contribute to the improvement in the administration and quality of justice in Minnesota.

The petitioners have asserted that, despite their concerted efforts to participate in the experiment to collect the necessary empirical data, the initial consent requirements were so restrictive as to frustrate the intent of the experiment itself; that despite these efforts, they have consistently met with refusals by parties involved in litigation to allow coverage. They further contend that technology has advanced to

such a degree as to eliminate any concerns that cameras provide a distraction to trial court participants and that the great measure of success of similar media efforts throughout the country should reassure the court with regard to its expressed initial concerns.

Despite these facially persuasive arguments advanced by the petitioners, those who are most directly affected by an expanded video coverage of proceedings have expressed an almost overwhelming opposition to the petition. The Minnesota State Bar Association, the Minnesota District Judges Association and the Minnesota Trial Lawyers Association testified to the various negative effects on the process as a whole while representatives of the Victim Witness Program of the Minnesota Department of Public Safety and the Hennepin County Attorney Victim Witness Assistance Program focused more specifically on the potential direct and subtle effects on the individuals who form their constituency. In a broad sense, the opposition to an amendment to the canon may be summarized as follows: that the reluctance of vulnerable individuals, including crime victims and witnesses, to testify will increase substantially given the likelihood of the public notoriety of their participation; that the rights of privacy of the same individuals are threatened by extensive exposure; that, no matter how technologically advanced, the mere presence of the equipment is a distraction; that proceedings ancillary to the trial may be necessitated as a result of challenges to camera coverage, resulting in additional costs and use of judicial time and resources; and that, after the proceedings have been completed, it is virtually impossible to measure or quantify the nature and extent of any impact on the litigation process or the participants' entitlement to a fair trial and due process.

We are both mindful and appreciative of this state's long-standing tradition of cooperation between the media and the judiciary. While we are aware of the breadth of acceptance of video reporting, we are reminded that a number of jurisdictions, including the federal courts, have not authorized this form of coverage. Moreover, we acknowledge the entitlement of the public and the print media representatives to full access to public proceedings which may directly affect all of us. In our view, in its present form, the canon provides sufficient accessibility to proceedings to allow an accurate dissemination of all significant events. Indeed, this petition is not premised on the singular claim of enhancement of the educational goals of increased media coverage. As a result, we remain convinced that any public purpose is best served by a continuation of the present practice and the limitations on the use of video coverage of these trial court proceedings.

Our primary administrative responsibility is to assure the continued availability of a public forum in which parties to civil or criminal proceedings may present their disputes for resolution—a process free from active or subtle distractions or influences in any form. Where those very individuals or organizations which represent the collective participants, as well as the majority of the trial judges themselves, have demonstrated legitimate concerns over their ability to receive or administer the protections afforded the process if coverage is expanded, we simply can neither minimize nor ignore those misgivings. In our view, a disposition of this petition requires a balancing of the broad interests of the public's entitlement to video rather than the present method of reporting the events of the proceeding against those more specific, identified interests and rights of the participants. We are persuaded that a denial of this petition will not have a negative impact on the already vigilant and extremely professional journalism practiced throughout this state. At the same time, we are not persuaded that expanded use of cameras in trial courts will not significantly alter, in many respects perhaps negatively, the quality and character of the substance and form of trial court proceedings. On balance, the petition must be denied.

The denial of this petition should not be interpreted as discouraging the bench and bar from further experimentation with audio-visual coverage of courtroom proceed-

ings; consequently, we have reinstated the experimental program previously in place.

Petition denied.

KEITH, Justice, concurring specially.

I concur with the decision to continue the Supreme Court order of April 18, 1983.

I would have been willing to grant to our district judges alone the authority to allow audio and visual coverage of certain trial court proceedings on a 1–year experimental basis.

Since this order went into effect in 1983, the audio and visual media were admitted to very few trial court proceedings. Clearly, the requirement that the district judge and the attorneys for the parties agree to such coverage, was responsible for its limited use. Audio and visual media were permitted on 13 occasions in our district courts and only approximately half of these occurrences were during actual trials. Minnesota has never experienced gavel-to-gavel camera coverage of a jury trial. The written reports to this court from the attorneys and trial judges that allowed media coverage in the courtrooms were generally favorable. They reported few complaints or interruptions and found the representatives of the media to be cooperative and sensible.

In the last 12 years, over 35 states, including Iowa and Wisconsin, have permitted some form of audio and visual coverage of their respective trial courts by the news media. I would hope that more judges and attorneys in the State of Minnesota would allow the media to cover certain district court proceedings under this rule. We have outstanding people in the audio and visual media fields and I believe they are responsible and will be understanding of the problems that judges, attorneys, litigants, witnesses and jurors experience in attempting to find justice in any given case. It is hoped that this order will not discourage further requests by the public and private media to our trial judges and bar so that we will have a broader experi-

ence to judge the merits of this fundamental issue.